J-A15023-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| PROFESSIONAL, INC. D/B/A PROFESSIONAL AUTO BODY, ASSIGNEE/POA, JULIE REITER AND SHAYNE REITER | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : | |
| v. | : : : | No. 1286 WDA 2021 |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY | : : : | |

Appeal from the Order Entered September 27, 2021,
in the Court of Common Pleas of Blair County,
Civil Division at No(s):  2018 GN 3295.

BEFORE:  BOWES, J., KUNSELMAN, J., and SULLIVAN, J.

MEMORANDUM BY KUNSELMAN, J.:          **FILED: AUGUST 22, 2022**

Professional, Inc. appeals from the trial court's entry of summary judgment in favor of State Farm Mutual Automobile Insurance Company in this case regarding payment for repairs to a vehicle.  Upon review, we affirm.

On May 16, 2018, Julie Reiter was involved in an automobile accident in a Jeep Trailhawk.  Julie Reiter and her husband Shayne Reiter owned the Jeep and insured it under an automobile insurance policy issued by State Farm (the Policy).  After the accident, the Reiters took their vehicle to Professionals' facility for repairs.  On May 17, 2018, the Reiters executed an authorization which authorized Professionals to negotiate with State Farm regarding repairs

and payment. On July 30, 2018, the Reiters assigned to Professionals any claims that they would be entitled to pursue against State Farm.

Professionals repaired the vehicle and charged $17,821.67 for its services. Despite Professionals' repeated demands, State Farm refused to pay the total amount charged, insisting that it had no obligation to pay more than the value set by its appraiser. State Farm tendered $9,444.75 for the repairs. Thereafter, Professionals filed the instant lawsuit, alleging Breach of Contract, Quantum Meruit, and Bad Faith, seeking the remainder of its bill ($8,376.92) and other relief under the bad faith statute.

The trial court set a discovery deadline, which it extended several times at Professionals' request. After more than two years had passed since the filing of the Complaint, and Professionals had conducted no discovery, State Farm filed a motion for summary judgment. It argued that summary judgment was appropriate because Professionals failed to produce evidence to establish any of the elements of its causes of action.

The trial court granted State Farm's motion. The court concluded that: 1) Professionals had not established that State Farm breached the contract, 2) no claim for unjust enrichment was available given that the relationship between Professionals and State Farm was founded upon a written agreement, and 3) the assignment between the Reiters and Professionals did not expressly assign a bad faith action. Professionals filed this timely appeal.

Professionals raises three issues on appeal:

    I.    Whether there remains a genuine issue of material fact as to whether the record supports Professionals' claim for breach of contract, where Professionals has claimed that the damages sought in connection with its work on the Reiter vehicle is covered by the policy with State Farm (hereinafter the "Policy"), such that summary judgment with respect to that cause of action would be inappropriate.

    II.    Whether there remains a genuine issue of material fact as to whether the record supports Professionals' claim for quantum meruit/unjust enrichment, which Professionals filed in the alternative to its breach of contract cause of action, and where State Farm has continued to challenge whether the Policy covers the work performed by Professionals, such that summary judgment with respect to that cause of action would be inappropriate.

    III.    Whether there remains a genuine issue of material fact as to whether the record supports Professionals' claim for Bad Faith, where the lower court initially ruled that the right to assign this cause of action was not specifically assigned to Professionals by the Reiters, where State Farm has continued to challenge the validity of the assignment from the Reiters to Professionals, and where information as to said claim is attached to Professionals' Complaint as Exhibit "C," such that summary judgment with respect to that cause of action would be inappropriate.

Professionals' Brief, at 3-4.

All three issues challenge the trial court's grant of summary judgment.

When reviewing a trial court's grant of summary judgment, the role of an appellate court is clear:

> [W]e apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered.

*Criswell v. Atl. Richfield Co.*, 115 A.3d 906, 908–09 (Pa. Super. 2015) (citations omitted).  Whether there are genuine issues of material fact presents a question of law for which our standard of review is *de novo*. *Weaver v. Lancaster Newspapers, Inc.*, 926 A.2d 899, 902–03 (Pa. 2007).

The Pennsylvania Rules of Civil Procedure require that a party who is faced with a motion for summary judgment to take affirmative action to produce evidence of its claims; that party cannot rest on the allegations in its pleadings.  Rule 1035.3 provides:

> [T]he adverse party may not rest upon the mere allegations or denials of the pleadings but must file a response within thirty days after service of the motion identifying
>
> (1) one or more issues of fact arising from evidence in the record controverting the evidence cited in support of the motion or from a challenge to the credibility of one or more witnesses testifying in support of the motion, or
>
> (2) evidence in the record establishing the facts essential to the cause of action or defense which the motion cites as not having been produced.

Pa.R.Civ.P. 1035.3.

Having failed to conduct any discovery with respect to this litigation, Professionals relies entirely on the allegations in its pleadings to oppose summary judgment.  Rule 1035 specifically states that this is not enough. Professionals did not cite deposition testimony, answers to interrogatories, or requests for admission to oppose the motion.  It also did not produce an affidavit or expert report from any of its own witnesses.  Thus, Professionals

did not identify any issues of fact "arising from evidence in the record." For this reason alone, summary judgment was appropriate.

For example, Professionals first contends summary judgment was inappropriate on its breach of contract claim. Professionals argues that State Farm breached the insurance contract by failing to pay the total cost of the repairs to the Reiter vehicle. State Farm asserts that Professionals has failed to proffer any evidence that it was required to pay that amount.

Under Rule 1035.2(2), a party may obtain summary judgment by pointing to the adverse party's lack of evidence on an essential element of the claim. *Staub v. Toy Factory, Inc.*, 749 A.2d 522, 527 (Pa. Super. 2000). "[F]or a plaintiff to successfully maintain a cause of action for breach of contract requires that the plaintiff establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *Gorski v. Smith*, 812 A.2d 683, 692 (Pa. Super. 2002). Focusing on the second element, Professionals asserts that State Farm has a duty to pay for the repairs that Professionals has charged, and that State Farm's failure to pay the full charged amount constitutes a breach of that duty. *See* Professionals' Brief, at 13-14.

To determine State Farm's obligation under the contract with the Reiters, we examine the policy language. The Policy outlines State Farm's obligations as follows:

> **Limits and Loss Settlement — Comprehensive Coverage and Collision Coverage**

1. We have the right to choose to settle with you or the owner of the covered vehicle in one of the following ways:

a. Pay the cost to repair the covered vehicle minus any applicable deductible.

(1) We have the right to choose one of the following to determine the cost to repair the covered vehicle:

(a) The cost agreed to by both the owner of the covered vehicle and us;

(b) A bid or repair estimate approved by us; or A repair estimate that is written based upon or adjusted to:

(i) the prevailing competitive price;

(ii) the lower of paintless dent repair pricing established by an agreement we have with a third party or the paintless dent repair price that is competitive in the market; or

(iii) a combination of (i) and (ii) above.

The prevailing competitive price means prices charged by a majority of the repair market in the area where the covered vehicle is to be repaired as determine by a survey made by us. If asked, we will identify some facilities that will perform the repairs at the prevailing competitive price. The estimate will include parts sufficient to restore to covered vehicle to its pre-loss condition.

You agree with us that the repair estimate may include new, used, recycled, and reconditioned parts. Any of these parts may be either original equipment manufacturer parts or nonoriginal equipment manufacturer parts.

∗∗∗

(3) If the repair or replacement of a part results in betterment of that part, then you or the owner of the covered vehicle must pay for the amount of that betterment.

Policy at 31-32.

Critically, "it is the insureds' burden to establish coverage under an insurance policy." ***Estate of O'Connell ex rel. O'Connell v. Progressive Ins. Co.***, 79 A.3d 1134, 1138 (Pa. Super. 2013). Professionals claims State Farm must pay the cost to repair the vehicle under Section 1. a. However, it ignores the next section of the policy which provides how State Farm determines the cost to repair. That section provides that State Farm has the right to choose from several options: the cost agreed to by both the owner of the covered vehicle and State Farm; a bid or repair estimate approved by State Farm; or a repair estimate that is written based upon or adjusted to "the prevailing competitive price," which is "the amount charged by a majority of the repair market in the area where the covered vehicle is to be repaired as determine by a survey made by [State Farm]." Policy at 31-32.

Nothing in the record suggests that State Farm ever agreed to the amount Professionals charged, or that Professionals relied on a bid approved by State Farm when it repaired the Reiters' vehicle. Additionally, Professionals offered no evidence to show that its repair invoice was adjusted to the competitive price as determined by a survey of local repair shops made by State Farm. Indeed, Professionals never sought such a survey in discovery that it could offer into evidence.

In short, State farm paid the amount it believed was due under the policy, and Professionals has failed to produce evidence of a contrary amount due. Professionals offered no evidence other than its own invoice, which by

itself, is not proof that State Farm breached its contract.[1] Without evidence, Professionals' claim fails.

Professionals repeatedly argues that State Farm has not conducted discovery or introduced evidence into the record. Such argument misses the mark; State Farm does not have a burden of proof in this case. Professionals, as the plaintiff in this lawsuit, has the burden to produce evidence of its claims. **Hart v. Arnold**, 884 A.2d 316, 332 (Pa. Super. 2005) ("To successfully maintain a cause of action for breach of contract the plaintiff must establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages.").[2]

---

[1] In fact, the notation on the invoice indicates that the customer agreed to pay the difference between new and refurbished parts. That is exactly what the Policy requires: "You agree with us that the repair estimate may include new, used, recycled, and reconditioned parts. Any of these parts may be either original equipment manufacturer parts or nonoriginal equipment manufacturer parts … (3) If the repair or replacement of a part results in betterment of that part, then you or the owner of the covered vehicle must pay for the amount of that betterment." Policy at 31-32.

[2] Professionals also argues summary judgment is inappropriate because the insurance agreement is ambiguous, and that ambiguity presents a question to be resolved by a jury. "[W]hile unambiguous contracts are interpreted by the court as a matter of law, ambiguous writings are interpreted by the finder of fact." **Kripp v. Kripp**, 849 A.2d 1159, 1163 (2004). Summary judgment, therefore, is inappropriate when a court finds ambiguity in a contract. **See Dressler Fam., LP v. PennEnergy Res., LLC**, 2022 PA Super 77, *11 (filed Apr. 29, 2022). Here, Professionals failed to raise the issue of ambiguity before the trial court. Thus, it waived this claim on appeal. Pa.R.A.P. 302(a).

Since no genuine issues of material fact exist regarding whether State Farm failed to pay an amount due under the policy, beyond what it already paid, we conclude that summary judgment was appropriate on Professionals' breach of contract claim.

In its second issue, Professionals claims a genuine issue of material fact exists with respect to its quantum meruit claim. However, we need not address the details of Professionals' argument because the claim of quantum meruit is unavailable here.

A quantum meruit claim consists of three elements: (1) Benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. *Shafer Elec. & Constr. v. Mantia*, 67 A.3d 8, 12 n.5 (Pa. Super. 2013). As this Court has explained:

> The quasi-contract theories of quantum meruit and unjust enrichment, by definition, imply that no valid and enforceable written contract exists between the parties. Critically. . . the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract."

*Id.* at 13.

Here, the relationship between Professionals and State Farm is entirely based on the contract between the Reiters and State Farm. Professionals relies on an assignment of the Reiters' contract claims. Further, no evidence supports the claim that State Farm was unjustly enriched by Professionals'

repair services. Therefore, we find that summary judgment with respect to Professionals' quantum meruit claim was appropriate.

Finally, Professionals argues a genuine issue of material fact exists with respect to its bad faith claim. The trial court granted summary judgment because it found the Reiters did not assign any bad faith claim to Professionals. We disagree.

The assignment contract between the Reiters and Professionals provides:

> Customer/Assignor desires to and does hereby assign to Professionals/Assignee any and all right, claim or other interests for which Customer could bring suit against [State Farm] and/or the person who caused the damage to the Customer/Assignor's vehicle, including but not limited to . . . bad faith and punitive damages.

Complaint, 1/16/19, at Exhibit B. Thus, contrary to the trial court's conclusion, the Reiters expressly assigned their bad faith claim to Professionals.

Nonetheless, we may affirm the trial court on any basis. *Wilson v. Parker*, 227 A.3d 343, 347 n.3 (Pa. Super. 2020). We determine that Professionals cannot, as a matter of law, establish a bad faith claim against State Farm under the facts of this case. To recover under a bad faith action, a plaintiff must meet the two-part test articulated by this Court in *Terletsky v. Prudential Property & Cas. Ins. Co.*, 649 A.2d 680 (Pa. Super. 1994). Under that test, the plaintiff must present clear and convincing evidence that: (1) the insurer did not have a reasonable basis for denying benefits under the

policy; and (2) the insurer knew of or recklessly disregarded its lack of a reasonable basis. *Id*. at 688.

The bad faith statute has been interpreted to provide a "cause of action which is separate and distinct from the underlying contract claim." *March v. Paradise Mut. Ins. Co.,* 646 A.2d 1254, 1256–57 & n. 5 (Pa. Super. 1994). Thus, failure to make out a claim for breach of contract does not necessarily warrant dismissal of a bad faith claim.  It is "settled law that an insured may pursue a bad faith claim ... without regard to the status of a parallel contractual claim."  Indeed, the bad faith statute "provides an independent cause of action to an insured that is not dependent upon success on the merits, or trial at all, of the contract claim." *Nealy v. State Farm Mut. Auto. Ins. Co.,* 695 A.2d 790, 792–93 (Pa. Super. 1997); *see also Nordi v. Keystone Health Plan West, Inc.,* 989 A.2d 376, 381–83 & n. 4 (Pa. Super. 2010) (addressing the bad faith claim on the merits despite the concession that the insured's coverage claim failed).

However, if the bad faith claim is premised only on the denial of coverage, resolution of a coverage claim on the merits in favor of the insurer requires dismissal of a bad faith claim.[3]  Under such circumstances, the insurer necessarily had a reasonable basis for denying benefits.

---

[3] If bad faith is asserted as to conduct beyond a denial of coverage, (*e.g.*, when the insured alleges that a bad faith investigation, handling of a claim, or unreasonable delay accompanied a claim denial), the bad faith claim is
*(Footnote Continued Next Page)*

Here, Professionals' bad faith claim is premised solely on State Farm's denial of coverage to pay for repairs to the Reiters' Jeep. Because Professionals offered no evidence that State Farm's denial of coverage was a breach of contract, its bad faith claim also fails. As such, summary judgment on this claim was appropriate.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/22/2022

---

actionable as to that conduct, regardless of whether the contract claim survives. **See e.g., Hollock v. Erie Ins. Exchange**, 842 A.2d 409 (Pa. Super. 2004); **Gold v. State Farm Fire & Cas. Co.**, 880 F. Supp. 2d 587, 597–98 (E.D. Pa. 2012).