J-A10019-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| WAVERLY CUSTOM HOMES, LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| MARCUS AND JENNIFER SMITH | : | |
| | : | |
| Appellants | : | No. 2267 EDA 2022 |

Appeal from the Judgment Entered July 29, 2022
In the Court of Common Pleas of Montgomery County
Civil Division at No(s):  2015-07919

BEFORE:   PANELLA, P.J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KING, J.:                          **FILED OCTOBER 10, 2023**

Appellants, Marcus and Jennifer Smith, appeal from the judgment entered in the Montgomery County Court of Common Pleas, in favor of Appellee, Waverly Custom Homes, LLC.  We affirm.

The relevant facts and procedural history of this case are as follows.  In 2013, after purchasing a home in Bryn Mawr, Pennsylvania, Appellants hired Appellee as a general contractor to oversee several renovation projects for the home.  The parties executed a home improvement contract ("Agreement") on October 22, 2013, and Appellee began the renovation.  In May 2014, however, Appellants put the project on hold, explaining that the renovation expenses had spiraled beyond their expectations.

---

[*] Former Justice specially assigned to the Superior Court.

On April 13, 2015, Appellee filed a complaint against Appellants seeking to recover unpaid invoices totaling $395,318.51 and other damages. After Appellants filed preliminary objections, Appellee filed an amended complaint on May 26, 2015, which included three counts: breach of contract, fraud and misrepresentation, and defamation and slander. Appellants filed an answer and new matter and asserted three counterclaims: breach of contract, fraud and misrepresentation, and violations of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL").[1]

On October 11, 2018, Appellants filed a motion for summary judgment asserting that the Agreement was a home improvement contract and therefore was governed by the Home Improvement Consumer Protection Act ("HICPA").[2] Appellants claimed that the contract was unenforceable by Appellee as the contractor because it failed to comply with the HICPA requirements governing such contracts. Appellee filed a response in opposition to the motion for summary judgment, together with a motion for leave to amend its complaint, requesting to amend the first count to include breach of contract and *quantum meruit*.

The trial court held argument on Appellants' motion for summary judgment and Appellee's motion for leave to amend its complaint. On March

---

[1] 73 P.S. §§ 201-1 to 201-9.3.

[2] 73 P.S. §§ 517.1 to 517.18.

- 2 -

13, 2019, the court found the Agreement was "invalid and unenforceable under HICPA." (Trial Court Opinion, filed 3/13/19, at 5). The court explained that the Agreement failed to comply with HICPA because it "fails to include 'a description of the work to be performed, the materials to be used and a set of specifications that cannot be changed without a written change order signed by the owner and the contractor.'" (*Id.* at 6) (quoting 73 P.S. § 517.7(a)(7)). Furthermore, the court found that the Agreement "fails to include 'the total sales price due under the contract.'" (*Id.*) (quoting 73 P.S. § 517.7(a)(8)). Ultimately, the court held that the "contract is not 'valid or enforceable' [and Appellants] are entitled to summary judgment in their favor on Count I of the complaint to the extent that it asserts a claim for breach of the contract." (*Id.*)

The court then turned to whether Appellee was entitled to bring a claim for *quantum meruit*. The court explained that the law clearly establishes that when a contractor fails to comply with section 7(a) of HICPA, they "can still assert a claim for *quantum meruit*, independent of its unenforceable home improvement contract." (*Id.* at 8). The court recognized, however, that if Appellee's amended complaint did not assert a claim for *quantum meruit*, the belated addition of such claim would now be barred by the statute of limitations. (*Id.* at 8-9). The court acknowledged that Appellee did not expressly plead a claim for *quantum meruit*. Nevertheless, the court noted that in Count II of the amended complaint, which pled a claim for fraud and

- 3 -

misrepresentation, Appellee averred: "These misrepresentations were deliberately designed to induce [Appellee] to provide work, valuable services and materials, all of which were used in the construction and improvements to [Appellants'] home, and all of which **unjustly enriched the defendants**." (*Id.* at 11-12) (quoting Amended Complaint, filed 5/26/15, at ¶ 33). Based on these averments in the amended complaint, the court decided that Appellee sufficiently pled a claim for *quantum meruit*. (*Id.* at 14). Accordingly, the court permitted Appellee to amend its complaint "to 'amplify' the claim, because it will not be introducing a new cause of action after the expiration of the statute of limitations." (*Id.*) (internal footnote omitted).

Thereafter, Appellee filed a second amended complaint alleging: Count I–*Quantum Meruit*/Unjust Enrichment; Count II–Fraud and Misrepresentation; and Count III–Defamation and Slander. (Second Amended Complaint, filed 3/13/19). Appellants responded and raised the following counterclaims: Count I–Breach of Contract; Count II–Fraud and Misrepresentation; Count III–Violation of the UTPCPL; and Count IV–Violation of HICPA. (Answer and New Matter, filed 4/8/19).

The case proceeded to trial on March 1-4, 2022.[3] During trial, a short time after Appellants began their case-in-chief, the parties reached an

_____

[3] By agreement, the jury would hear all claims and counterclaims, and it would render an advisory verdict for any claims that did not afford the moving party the right to a jury trial. (**See** Trial Court Opinion, filed 9/26/22, at 1-2). Prior
*(Footnote Continued Next Page)*

impasse about the viability of Appellants' breach of contract counterclaim, based upon the earlier ruling by the trial court deeming the contract invalid and unenforceable. Specifically, "[Appellants] were continually seeking to present evidence of the [Agreement] to prove the breach of contract [counter]claim despite the earlier ruling…deeming the contract to be invalid and unenforceable." (Trial Court Opinion, filed 3/10/22, at 6).

The following exchange then took place:

> THE COURT: It appears to me that at this particular juncture based on this issue and the argument on this particular line of questioning that is being presented tees up for us the issue of whether the contract of October 22, 2013, is enforceable by the owners against the contractor. This general case law or law that might be applicable, [Appellants] say yes. [Appellee] says no.
>
> We're going to take a break, and in fairness to all the parties, I'm going to allow counsel to brief that issue so we can bring that issue to a head. If you all are in agreement, bring it to a head, go home, brief it, go back to your offices, brief it, and come argue that tomorrow morning, and we can get to the bottom of this breach of contract claim that's contained in [Appellants'] counterclaim.
>
> Is that acceptable, [Appellants' counsel]?
>
> [APPELLANTS' COUNSEL]: Yes, Your Honor.
>
> THE COURT: Is that acceptable?
>
> [APPELLEE'S COUNSEL]: Yes, Your Honor.

(N.T. Trial, 3/2/22, at 228).

_____

to trial, the parties stipulated to dismiss Appellee's claims at Count II–Fraud and Misrepresentation and Count III–Defamation and Slander.

The next day, after considering the parties' briefs and arguments, the court found that Appellants' breach of contract counterclaim was not viable and "dismissed the [b]reach of [c]ontract [counter]claim after consideration of the arguments; in accordance with the agreement of the parties to consider and determine the viability of the breach of contract claim based on the [Agreement]." (Trial Court Opinion, filed 3/10/22, at 7-8). Following the dismissal of their counterclaim, Appellants sought to amend their counterclaim to include an "implied in fact" contract cause of action. The trial court denied this request noting that there was no reference to an "implied in fact" claim in Appellants' counterclaim.

The trial continued and the jury returned its verdict on March 4, 2022. The jury found in favor of Appellee on its *quantum meruit* claim in the amount of $387,685.31. With respect to Appellants' counterclaim for fraud and misrepresentation, the jury found in favor of Appellee. In addition, the jury rendered an advisory verdict in favor of Appellee with respect to Appellants' UTPCPL claim, and, despite the court directing a verdict in favor of Appellants for their HICPA claim, the jury awarded no damages to Appellants. The trial court partially adopted the advisory jury verdicts, with the exception of the verdict as to damages for the violation of HICPA. As to that claim, the court awarded Appellants $5,000.00 in damages.

On March 15, 2022, Appellee filed a motion to mold the verdict, seeking prejudgment interest. The court granted the motion on June 13, 2022, and

- 6 -

on July 27, 2022, the court awarded Appellee pre-judgment interest in the amount of $154,167.91. Meanwhile, Appellants filed a motion for post-trial relief on March 21, 2022, which the trial court granted in part, reducing Appellee's award to $316,062.00. The court denied relief on Appellants' request for a new trial based on their assertion that the dismissal of the breach of counterclaim was an error.

On July 29, 2022, Appellee filed a *praecipe* for entry of judgment, and the prothonotary entered judgment in favor of Appellee and against Appellants in the amount of $470,229.91. Appellants filed a timely notice of appeal on Monday, August 29, 2022. The next day, the court ordered Appellants to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b). Appellants complied and filed their concise statement on September 20, 2022.

Appellants raise the following two issues on appeal:

> 1. Did the trial court err by allowing [Appellee] to amend its Complaint to assert a *quantum meruit* claim after the statute of limitations for such a claim had expired?
>
> 2. Did the trial court err by dismissing [Appellants'] counterclaim for breach of contract, where that ruling violated [HICPA's] text and purpose, and was procedurally improper?

(Appellants' Brief at 6).

In their first issue, Appellants contend that the trial court erred when it granted Appellee's motion to amend its complaint to assert a *quantum meruit* claim after the court had already granted partial summary judgment in favor of Appellants on Appellee's breach of contract claim. Appellants argue the

- 7 -

court lacked authority to allow Appellee to add a *quantum meruit* claim because the four-year statute of limitations had already expired. Appellants insists the trial court erred in finding that Appellee had previously asserted a *quantum meruit* claim in its initial amended complaint based merely on Appellee's mention of "unjust enrichment" in its fraud and misrepresentation claim. Appellants emphasize that *quantum meruit* is a separate theory of recovery than unjust enrichment, and the court erred in relying on Appellee's mention of unjust enrichment to form the basis of a *quantum meruit* claim. Appellants conclude the Appellee's claim for *quantum meruit* was time-barred, and this Court must grant relief. We disagree.

"When reviewing a trial court's ruling on a petition to amend a complaint, we grant the trial court a broad discretion in evaluating the petition. We will not disturb the sound discretion of the trial court absent an abuse of discretion." *Diaz v. Schultz*, 841 A.2d 546, 549 (Pa.Super. 2004), *appeal denied*, 578 Pa. 709, 853 A.2d 362 (2004) (internal quotation marks and citation omitted).

Amendments to pleadings are governed by Rule of Civil Procedure 1033, which provides in part:

> (a) A party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action, add a person as a party, correct the name of a party, or otherwise amend the pleading. The amended pleading may aver transactions or occurrences which have happened before or after the filing of the original pleading, even though they give rise to a new cause of action or defense. An amendment may be made to conform the pleading to the

evidence offered or admitted.

Pa.R.C.P. 1033(a).

"Leave to amend lies within the sound discretion of the trial court and the right to amend should be liberally granted at any stage of the proceedings unless there is an error of law or resulting prejudice to an adverse party." *Hill v. Ofalt*, 85 A.3d 540, 557 (Pa.Super. 2014) (citation omitted). *See Morrison Informatics, Inc. v. Members 1st Fed. Credit Union*, 635 Pa. 636, 646, 139 A.3d 1241, 1246 (2016) (noting that "amendments to pleadings under Rule of Civil Procedure 1033 should be granted with liberality so as to secure determination of cases on their merits **whenever possible**") (citation and internal quotation marks omitted; emphasis in original).

Nevertheless, an amendment should not be allowed where it would present an entirely new cause of action where the statute of limitations has expired. *Phillips v. Lock*, 86 A.3d 906, 915 (Pa.Super. 2014). "A proposed amendment of the complaint which adds or changes the theory of recovery upon which relief is sought through the introduction of new factual allegations generally constitutes a new cause of action." *Rachlin v. Edmison*, 813 A.2d 862, 871 (Pa.Super. 2002) (citing *Reynolds v. Thomas Jefferson University Hospital*, 676 A.2d 1205, 1210-11 (Pa.Super. 1996), *appeal denied*, 549 Pa. 703, 700 A.2d 442 (1996)). On the other hand, "if the proposed amendment does not change the cause of action but merely amplifies that which has already been averred, it should be allowed even

though the [s]tatute of [l]imitations has already run." **Stalsitz v. Allentown Hosp.**, 814 A.2d 766, 776 (Pa.Super. 2002)

"*Quantum meruit* is an equitable remedy to provide restitution for unjust enrichment in the amount of the reasonable value of services." **Durst v. Milroy Gen. Contracting, Inc.**, 52 A.3d 357, 360 (Pa.Super. 2012) (quoting **Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.**, 606 Pa. 584, 594 n.8, 2 A.3d 526, 532 n.8 (2010)). Our Supreme Court has explained that "a *quantum meruit* action sounds in quasi-contract, a form of restitution, and is made out where one person has been unjustly enriched at the expense of another." **Shafer Elec. & Const. v. Mantia**, 626 Pa. 258, 262 n.3, 96 A.3d 989, 992 n.3 (2014) (internal citations, quotation marks, and brackets omitted).

"Therefore, a claim of *quantum meruit* raises the issue of whether a party has been unjustly enriched, and in order to prove such claim a party must successfully prove the elements of unjust enrichment." **Mitchell v. Moore**, 729 A.2d 1200, 1202 n.2 (Pa.Super. 1999), *appeal denied*, 561 Pa. 698, 751 A.2d 192 (2000). The elements necessary to prove unjust enrichment are as follows:

> (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. The application of the doctrine depends on the particular factual circumstances of the case at issue. In determining if the doctrine applies, our focus is not on the intention of the

- 10 -

parties, but rather on whether the defendant has been unjustly enriched.

*Id.* at 1203–04 (citation and emphasis omitted).

Instantly, the trial court explained that in seeking to amend the complaint,

> [c]ounsel for [Appellee] cited paragraph 33 of the [c]omplaint. This paragraph, included in Count II for fraud and misrepresentation, avers: "These misrepresentations were deliberately designed to induce [Appellee] to provide work, valuable services and materials, all of which were used in the construction and improvements to [Appellants'] home, and all of which **unjustly enriched the defendants**." (Amended Complaint, at ¶ 33) (emphasis added). [Appellee] argues that the reference to unjust enrichment of [Appellants] is sufficient to place them on notice of a claim for *quantum meruit*. …

(Trial Court Opinion, 3/13/19, at 12) (footnotes omitted, citation formatting provided). The trial court continued:

> [T]he fact remains that [Appellee] has alleged in its [c]omplaint that it performed construction and improvement services at the request of [Appellants], ([Amended Complaint] at ¶¶ 6, 9, 15, 33), that [Appellants] refused to pay for such services, (*Id.* at ¶ 34), and that [Appellants] were "unjustly enriched" (*Id.* at ¶ 33)—"a synonym for *quantum meruit*." ***N.E. Fence & Iron Works, Inc. v. Murphy Quigley Co.***, 933 A.2d 664, 667 (Pa.Super. 2007). These are the necessary elements of a claim by a home improvement contractor for *quantum meruit*. ***Durst, supra*** at 360. Accordingly, the [c]ourt holds that [Appellee's] [c]omplaint is sufficient to assert a claim for *quantum meruit*. It follows that [Appellee] may amend its [c]omplaint to "amplify" the claim, because it will not be introducing a new cause of action after the expiration of the statute of limitations.

(*Id.* at 14) (footnotes omitted, citation formatting provided).

- 11 -

Upon review, we see no abuse of discretion in the trial court's conclusion that Appellee's proposed amendment to the complaint did not constitute adding a wholly new cause of action after expiration of the statute of limitations. Specifically, Appellee did not assert new facts to establish its entitlement to relief, as its claim for *quantum meruit* was based on the same facts previously alleged in the initial amended complaint. ***See Rachlin, supra***. Rather, Appellee merely sought to "amplify" the allegations previously stated. ***See Stalsitz, supra***. Based on the claims raised in Appellee's initial amended complaint as set forth above and recognizing that leave to amend a complaint should be freely given, we see no abuse of discretion in the trial court's ruling to permit Appellee to amend its complaint and include a claim for *quantum meruit*, where the previous complaint had already pled all the elements necessary to establish such claim. ***See Morrison Informatics, Inc., supra***; ***Hill, supra***. Accordingly, Appellants' first issue is meritless.

In their second issue, Appellants argue that the trial court erred when it dismissed their counterclaim for breach of contract during trial. Within this issue, Appellants present three sub-arguments. First, Appellants insist the court erred in dismissing the counterclaim because HICPA only bars contractors from attempting to enforce an invalid contract and they, as homeowners, should be permitted to enforce the Agreement. Second, Appellants contend the trial court erred when it denied their request to amend their counterclaim to assert a claim for breach of an implied in fact contract.

- 12 -

Finally, Appellants claim that the trial court erred procedurally when it dismissed their counterclaim in the middle of trial without a pending motion to dismiss or motion for a directed verdict. We discuss each of these sub-arguments separately.

Regarding Appellants' first sub-argument, we initially note that the trial court correctly decided that the Agreement did not comply with Section 517.7(a) of HICPA. Specifically, the Agreement failed to include a description of the work to be performed, materials used, and a set of specifications that cannot be changed without a written change order, in violation of Section 517.7(a)(7). *See* 73 P.S. § 517.7(a)(7). Additionally, the Agreement did not include the total sales price due under the contract, in violation of Section 517.7(a)(8). *See* 73 P.S. § 517.7(a)(8). As our Courts have made clear, HICPA requires compliance with all factors set forth at Section 517.7(a) to validly create a construction contract under the statute. ***Shafer Elec. & Const. v. Mantia***, 626 Pa. 258, 268, 96 A.3d 989, 996 (2014). Appellants do not dispute the trial court's finding that the contract did not comply with the requirements set forth in Section 517.7(a); however, they suggest that this only renders the Agreement invalid or unenforceable **by the contractor** and insist that the Agreement remains valid and enforceable by the homeowner.

In ***Dippel v. Brunozzi***, 365 Pa. 264, 267, 74 A.2d 112, 114 (1950), our Supreme Court held that an agreement between parties which violates a

- 13 -

provision of a statute is illegal, unenforceable, and void *ab initio*. The Court

further explained that such contract

> cannot, under any circumstances, be made the basis of a cause of action. The law when appealed to will have nothing to do with it, but will leave the parties just in the condition in which it finds them. If they have fully executed their unlawful contract, the law will not dist[ur]b them in the possession of what each has acquired under it. If one has executed in whole or in part, the law turns a deaf ear when he pleads for its aid to compel the other to do as much.

*Id.* (citation omitted).

Appellants suggested that under *Peyton v. Margiotti*, 398 Pa. 86, 156 A.2d 865 (1959), they may still enforce a contract that has been invalidated by statute. In *Peyton*, our Supreme Court held that a contract agreement that provided for a fee wholly contingent upon success of a petition for pardon was against public policy. Nevertheless, the Court declined to find the contract void. It explained that the parties, an attorney and client, were not equal, and therefore "despite the essential invalidity of the contingent fee agreement the law should be allowed to favor the plaintiffs because of the circumstances." *Peyton, supra* at 93, 156 A.2d at 869.

Appellants have not cited any case where either this Court or our Supreme Court have expanded the holding of *Peyton* into circumstances similar to those before us. As the parties to the Agreement at issue were not an attorney and client on an "unequal" playing field like in *Peyton*, that case is distinguishable from the facts present here. Therefore, we agree with the trial court that Appellants are not entitled to enforcement of a void and

unenforceable contract. ***See Dippel, supra***.

With respect to their second sub-argument, the trial court explained its denial of Appellants' request to amend its counterclaim to include a breach of an implied in fact contract, as follows:

> Following the ruling dismissing [Appellants'] breach of contract [counter]claim, [Appellants] sought to amend their counterclaim to include an implied-in-fact contract cause of action referencing the similar circumstances in which [the court] allowed [Appellee] to amend [its] pleadings. However, the circumstance [Appellants] found themselves in was not akin to that of the [Appellee], previously. In allowing [Appellee] to amend its Complaint, [the court] found that [Appellee's] complaint adequately asserted language that put [Appellants] on notice of a *quantum meruit*/unjust enrichment claim which thereby preserved the claim from being barred by the statute of limitations. Presently, [the trial court] was unable to find any such language that would put [Appellee] on notice of an implied-in-fact contract claim. In [Appellants'] Answer, New Matter, and Counter Claim to the Second Amended Complaint, [the trial court] only found reference made to the Contract itself. The "Contract" actually being a defined term in the [counterclaim] asserted by [Appellants]. [Appellants] defined "Contract" as "a written contract" that was entered into on or about October 23, 2013. [Appellants] at no point in their pleadings aver an implied-in-fact contract claim that would allow this [c]ourt to find that [Appellee] was put on notice of such a claim. Moreover, any new claim would be barred by the statute of limitations. Consequently, this [c]ourt denied [Appellants'] request to amend their pleadings to include an implied-in-fact contract claim.

(Trial Court Opinion, filed 3/10/22, at 8). We agree with the trial court's reasoning and see no abuse of discretion in the court's denial of Appellants' petition to amend its counterclaim. ***See Phillips, supra***; ***Hill, supra***.

Concerning their final sub-argument in their second issue on appeal,

- 15 -

that the trial court committed a procedural error when it dismissed their counterclaim for breach of contract in the midst of trial, we must initially consider whether Appellants properly preserved this issue for appeal.

> In order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and fundamental error will result in waiver of that issue. On appeal the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected.

*Hong v. Pelagatti*, 765 A.2d 1117, 1123 (Pa.Super. 2000) (citations omitted).

Here, our review of the record confirm that the parties agreed during trial to the procedure suggested by the trial court—namely, that the parties brief the issue and argue their respective positions, mid-trial, so that the trial court could determine whether the breach of contract counterclaim was or was not a valid and viable claim. (*See* N.T. Trial, 3/2/22, at 228). Because Appellants did not make a timely, specific objection to this procedure, we conclude that they did not preserve this issue for appeal. *See Hong, supra*. Accordingly, we affirm.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>10/10/2023</u>